# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALIBU MEDIA, LLC, | Case No. 1:16-cv-01059-AWI-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT BE GRANTED IN PART AND DENIED IN PART** |
| v. | |
| CHRISTIAN SIANTURI, | |
| Defendant. | (Doc. No. 28) |
| _____/ | **OBJECTIONS DUE: 21 DAYS** |

## I. INTRODUCTION

On May 25, 2017, Plaintiff Malibu Media, LLC filed Motion for Entry for Default Judgment against Defendant Christian Sianturi (the "Motion"). (Doc. 28.) No opposition to the Motion was filed. After having reviewed Plaintiff's papers and all supporting material, the matter was deemed suitable for decision without oral argument pursuant to Local Rule 230(g), and the hearing was vacated on July 31, 2017. (Doc. 31.)

For the reasons set forth below, the undersigned RECOMMENDS that Plaintiff's Motion for Entry of Default Judgment be GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

Plaintiff Malibu Media, LLC, doing business as "X-Art.com" ("Plaintiff"), is a California

limited liability company that is the registered owner of copyrights to adult films. (Doc. 18 ("Am. Compl.") ¶¶ 3, 8.) Defendant Christian Sianturi is an individual allegedly residing in Fresno, California. (Am. Compl. ¶ 9.)

Plaintiff hired investigators IPP International UG ("IPP") and Excipio GmbH ("Excipio") to investigate unauthorized copies of its works on the BitTorrent file distribution network and to trace the infringing distributors. (*Id.* ¶¶ 5–6, 17–25.) BitTorrent is a peer-to-peer file sharing system used for distributing large amount of data, including digital copies of movies. (*Id.* ¶ 10) To distribute a large digital file, BitTorrent breaks a file into many small pieces. (*Id.* ¶ 12) These pieces are exchanged among users in the network, and then once the recipient receives all of the pieces of a file, the BitTorrent software will reassemble the pieces so that the file can be opened and used. (*Id.* ¶¶ 12–13.) Each piece of a BitTorrent file is assigned a unique cryptographic hash value ("piece hash") that identifies the piece and ensures that it is properly routed. (*Id.* ¶¶ 14–15.) The entire digital file is also given a hash value ("file hash"), which acts as an identifier and is used by the BitTorrent software to determine when the file is complete and accurate. (*Id.* ¶ 16.)

IPP and Excipio allegedly downloaded "one or more pieces" at 32 different times through a direct connection with internet protocol ("IP") address 50.173.4.30. (*Id.* ¶¶ 17–18, Ex. A) IPP and Excipio allegedly downloaded pieces at the following times and from media files with the following file hashes:

| File # | Hit Date | File Hash |
|---|---|---|
| 1 | 06/10/2016 08:22:40 | 16B716D190DE14ED20A84FF664189C550B50748A |
| 2 | 05/29/2016 05:55:41 | 3CD4FFAF5440DFE6A6E9BE4946542C08ECB5C417 |
| 3 | 05/22/2016 03:24:43 | 48D8C9C07B500EFB0DDE9914C9781EAD32EDE068 |
| 4 | 05/20/2016 04:46:14 | 065338DB17BE8DB45AC608FED6E0D89A91C018B3 |
| 5 | 05/20/2016 03:31:55 | 1A44F938F9E34A86F83E4AD47EDB272E0B9AF2A3 |
| 6 | 05/06/2016 06:46:11 | DB8E65EA5C58D475257E9AF17FAF0F658041E176 |
| 7 | 04/13/2016 06:47:01 | F953C506467360C00755868B4FFF1615E65B8D89 |
| 8 | 04/11/2016 06:45:12 | 4A417B96F8A1F98861B8A25FF3F0CE4E03119D92 |

| | | |
|---|---|---|
| 9 | 04/11/2016 05:11:42 | F712820D91B282CB138D7524795C24D407EC947C |
| 10 | 04/04/2016 05:27:38 | 73B88A9B713DFC6084C683487AAEAF743AA93289 |
| 11 | 04/04/2016 03:56:28 | AE7A1B3E5D98275212826E9184C2BCDA7F63650B |
| 12 | 04/04/2016 03:56:21 | 2C53E442069C3D23F3DFE70C817AEFD5B0B1D854 |
| 13 | 03/23/2016 04:00:58 | 1A17A4EE38D289D43F64ADBD8D694A33CAE574F9 |
| 14 | 02/10/2016 00:41:55 | 6BE2169D7F4771B91A820211F6D6CD6346F2BA64 |
| 15 | 02/10/2016 00:27:02 | 74538C81BB43F501334963E3648FCC043754150F |
| 16 | 02/09/2016 08:46:02 | AC25BCAF1E7FE4D2F84E4FFCB420CA861C36DE9F |
| 17 | 01/17/2016 09:05:00 | DD27C23938B719166309DA7593FC76FB48A4B741 |
| 18 | 10/25/2015 07:34:48 | 88880BA49BE6AECD218F30F515D301C1527CF1D2 |
| 19 | 10/14/2015 06:04:32 | 3C51F17B5DEAC60CFC27949687BDB98FA9A2259C |
| 20 | 09/22/2015 07:23:20 | 4A3630F4DC5E33576CEBA61591886392A7521943 |
| 21 | 09/15/2015 07:31:43 | D1938508B57B1953E3CB1905052DA996C5AF823B |
| 22 | 09/12/2015 06:46:01 | 137D2AC45D2B7D690622CA9FCB18B0B214CF68F6 |
| 23 | 09/12/2015 02:45:00 | 10D7125FBBDE277A225D5E790B33297F69A36E68 |

(*Id*. at Ex. A, ¶ 25.) They then downloaded full copies of each media file associated with the file hash from BitTorrent and confirmed that each of those files contained a digital copy of a movie that is Plaintiff's copyrighted work. (*Id.* ¶ 20; *see* Ex. B) Files #4 and 5 are "siterip" files that contain zip folders. (*Id.* ¶ 21.) These zip folders contain 6 and 5 of Plaintiff's works, respectively. (*Id.* ¶ 21; *see* Ex. C.) The other files contain a single work each. (*Id.* Ex. A.)

Plaintiff filed its original complaint on July 24, 2016, essentially against the IP address, using a fictitious name for the defendant. (Doc. 1.) To determine in which jurisdiction it should file suit, Plaintiff alleges it used "proven" geolocation technology to trace the IP address to a physical address in this district. (Am. Compl. ¶ 5.) Plaintiff then moved under Federal Rule of Civil Procedure 26(d)(1) to serve a subpoena on Comcast Cable, the provider of the IP address, to force it to reveal the identity of the owner of the allegedly infringing IP address. (Doc. 8.) The

Court permitted Plaintiff to serve a third-party subpoena, but imposed several restrictions "intended to provide additional safeguards to Defendant's privacy interests," and noted that the Court "takes very seriously the concerns noted by Judge Hellerstein of the Southern District of New York and Judge Wright of the Central District of California, among many others, regarding the potential for abuse in cases such as this . . . . [Plaintiff] is cautioned that any abuses of the judicial system or the discovery process will not be taken lightly. (Doc. 13.)

On March 8, 2017, Plaintiff filed the Amended Complaint naming Mr. Sianturi as the defendant and owner of the IP address and claiming that Defendant used BitTorrent to infringe on its exclusive rights by copying, reproducing, and redistributing 32 movies, despite the fact that Plaintiff held a registered copyright for each. (Am. Compl.) Plaintiff alleged one claim for relief against Defendant: direct infringement of Plaintiff's right to reproduce, redistribute, perform, or display copyrighted works, in violation of 17 U.S.C. §§ 106 and 501. (Am. Compl. ¶ 33) Plaintiff requested a permanent injunction against Defendant from continuing to infringe its works, an order that Defendant delete all digital media files relating to Plaintiff's works, an award of statutory damages for each infringed work, and an award of attorney's fees and costs. (*Id.* at 6.)

A summons was issued and Defendant was served on March 18, 2017. (Docs. 19, 24.) On April 27, 2017, Plaintiff requested that the Clerk enter default against Defendant. (Doc. 25.) The Clerk filed an entry of default on the same day. (Doc. 26.) Plaintiff filed its Motion for Entry for Default Judgment on May 25, 2017. (Doc. 28.) Plaintiff proposes that the Court order Defendant to pay $24,000 in statutory damages under 17 U.S.C. § 504(a) and (c) and $1,647 in attorney's fees and costs under 17 U.S.C. § 505 for a total of $25,647.00, as well as enjoin further infringement of its copyrighted works. (Doc. 28-4 ("Proposed Order").)

### III. DISCUSSION

**A. Legal Standard**

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a). It is within the sole discretion of the court as to whether default judgment should be entered. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default by itself does not entitle a plaintiff to a court-ordered

judgment. *See Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The *Eitel* factors include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See id.*

"In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo–Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)). As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo*, 826 F.2d at 917-18 (9th Cir. 1987). However, although well-pleaded allegations in the complaint are admitted by the defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

**B.    Analysis**

    **1.    The *Eitel* Factors Favor Entry of a Partial Default Judgment**

        **a.    Possibility of Prejudice to Plaintiff**

The first *Eitel* factor considers whether Plaintiff would suffer prejudice if default is not entered. Defendant was properly served on March 18, 2017, but has failed to appear and defend himself. If default judgment is not entered, Plaintiff will effectively be denied a remedy until Defendant participates and makes an appearance in the litigation—which may never occur. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("prejudice" exists where the plaintiff has no "recourse for recovery" other than default judgment). Therefore, Plaintiff would be prejudiced if the Court were to deny its application for default

5

judgment. This factor weighs in favor of default judgment. *See Maxum Indem. Co. v. Court Servs., Inc.*, No. 2:11-cv-2014 GEB EFB, 2012 WL 2090473, at *2 (E.D. Cal. June 8, 2012); *Burlington Ins. Co. v. Diamond Partners, Inc.,* No. 1:10-cv-00100-LJO-SKO, 2011 WL 284490, at *3 (E.D. Cal. Jan. 25, 2011).

### b. Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint

The next relevant *Eitel* factors include the merits of the substantive claims pleaded in the complaint as well as the general sufficiency of the complaint. In weighing these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DirecTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).

The Amended Complaint asserts a cause of action for direct copyright infringement, in violation of 17 U.S.C. §§ 106 and 501. (Am. Compl. ¶ 33.) To establish a claim for copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). Plaintiff sufficiently alleges that it owns valid copyrights in the 32 movies by attaching as Exhibit B to the Amended Complaint a spreadsheet documenting the registration status of the movies with the United States Copyright Office. (Am. Compl. Ex. B). The movies are either registered or pending registration, and the spreadsheet documents the registration numbers and dates of registration of the movies. (*Id.*) These allegations are sufficient to show ownership of valid copyrights. *See Clifton v. Pearson Educ., Inc.*, No. 5:11-CV-03640-EJD, 2012 WL 1565236, at *4 (N.D. Cal. May 2, 2012). As to the second element, Plaintiff's allegations are sufficient to establish that Defendant had unauthorized copies of the single movies in each of files #1–3 and 6–23, but not the 11 movies in files #4 and 5.

Plaintiff alleges that its investigators, IPP and Excipio, identified the allegedly infringing files through establishing a direct connection with Defendant's IP address and downloading "one or more pieces" of the 23 files at 23 different times. (Am. Compl. ¶¶ 17–18, Ex. A) Plaintiff does

6

not explain its investigators' process for determining that the downloaded "pieces" came from a specific file. Plaintiff alleges that the pieces have "piece hashes" to identify them and that when the pieces are assembled into a file there are "file hashes" to identify the complete digital media file. (Am. Compl. ¶¶ 14–16.) But how they identify the file origin of the few pieces they downloaded from Defendant is not explicitly pleaded. That said, it is easy to imagine that a downloaded piece can be matched to one work as it contains information taken from that work. Thus, the allegations that IPP and Excipio downloaded one piece each from files #1–3 and 6–23, which each contain a single copyrighted movie, and identified that piece as part of an unauthorized copy of their copyrighted work suffices to establish a plausible claim of copyright infringement as to those works. *See Malibu Media, LLC v. Nowobilski*, No. 15-cv-2250 (KM)(MAH), 2016 WL 4059651, at *4 (D.N.J. July 26, 2016).

But the allegation that the same size piece also establishes that 11 separate unauthorized copies were on Defendant's computer within files # 4 and 5 requires more factual allegations to explain how one piece can identify separate works. It has not been alleged whether the piece that Plaintiff contends identifies the 6 works in file #4, for example, is a piece of any one work or pieces of all 6 (or if there is some other method of identification). As to these 11 movies in files #4 and 5, the Court is not satisfied that the Amended Complaint establishes that Plaintiff is entitled to judgment. *See id.* at *5 (finding that the plaintiff did not establish entitlement to default judgment as to 127 videos contained in a single zip folder because it did not specifically plead how "one or more bits" identified 127 separate videos on the defendant's computer).

### c. The Sum of Money at Stake in the Action

The fourth *Eitel* factor, the sum of money at stake, weighs in favor of granting default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594-JSW, 2007 WL 1545173 at *12 (N.D. Cal. May 29, 2007). Here, Plaintiff is seeking a default judgment in the amount of $25,647.00, which includes attorney's fees and costs.[1]

---

[1] Plaintiff requests statutory damages in the amount of $24,000.00, attorney's fees in the amount of $1,182.00, and costs in the amount of $465.00, for a total of $25,647.00. (Doc. 28-2 (Declaration of Henrik Mosesi in Support of Mot. for Entry of Default J. ("Mosesi Decl.") ¶¶ 8–9); Doc. 28-3 at 10.)

This is not a relatively large sum of money, nor does it appear unreasonable, subject to the deductions set forth below.

### d. The Possibility of a Dispute Concerning the Material Facts

Here, there is some doubt as to whether the individual named as the defendant is indeed the culpable party. He is identified essentially as the person who corresponds to a certain IP address. Electronically, of course, an IP address connects to a device, not a person, and it is impossible to determine the identity of the device user from subscriber information. It could be, for example, that someone else in the household (or for that matter someone pirating wireless service) is the actual infringer.[2]

That said, there seems to be a good faith basis for naming the particular individual, and the limited knowledge possessed by Plaintiff corresponds to the balanced, carefully limited discovery permitted by the Court. (Doc. 13.) Defendant could have responded with a denial to contradict the well-pleaded allegations in the Amended Complaint—which are taken as true, *see Televideo Sys.*, 826 F.2d at 917–18—but defaulted instead.

On balance, this factor generally, if not strongly, weighs in favor of default.

### e. Whether Default Was Due to Excusable Neglect

Defendant failed to file a responsive pleading or oppose Plaintiff's Motion for Entry of Default Judgment. The Court has no evidence before it establishing that Defendant's failure to participate in the litigation is due to excusable neglect. Thus, this factor weighs in favor of granting default judgment.

---

[2] Recognizing this potential for misidentification, Judge William Alsup of the United States District Court for the Northern District of California, who was assigned all Malibu Media cases in that district, *see* Order Reassigning Cases, *Malibu Media, LLC, v. Doe*, Civ. No. 15–4195 (Doc. 7) (N.D. Cal. Sept. 29, 2015), stayed a subpoena over "Malibu Media's failure to include a sworn record on the reliability of its IP address geolocation methodology" and applied the ruling to future and pending requests. *Malibu Media, LLC v. Doe*, Civ No. 16-1006, 2016 WL 3383830, at *3–4 (N.D. Cal. June 20, 2016). In the United States District Court for the Eastern District of New York, Magistrate Judge Steven Locke stayed all of Malibu Media actions in that district pending the resolution of a motion to quash based on, among other reasons, serious questions about the method for identifying allegedly infringing users and about Malibu Media's abusive litigation practices. *E.g.,* Order Staying Cases, *Malibu Media, LLC v. Doe*, Civ No. 15–3504 (Doc. 12) (E.D.N.Y. October 6, 2015).

### f. Strong Policy Favoring Decisions on the Merits

This factor weighs against entry of default judgment in every case, but this policy factor is not dispositive, particularly when a defendant fails to appear and defend the action. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Although a decision on the merits is preferable, this policy factor alone does not preclude the entry of default judgment.

### 2. Terms of the Judgment and Proof of Damages

While analysis of the *Eitel* factors supports a default judgment, the Court also considers the proof of the damages and the terms of the judgment sought by Plaintiff.

### a. Statutory Damages

Plaintiff elects statutory damages under 17 U.S.C. § 504(c)(1). (Doc. 28-3 at 9.) That section provides:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C § 504(c)(1). The Court has broad discretion in setting the amount of statutory damages under the Act. *Reno-Tahoe Specialty, Inc., v. Mungchi, Inc*., No. 2:12–cv–01051–GMN–VC, 2014 WL 7336082, at *10 (D. Nev. Dec. 19, 2014).

Plaintiff requests the minimum of $750.00 per work in damages, multiplied by 32 works, for a requested total of $24,000. (Doc. 28-3 at 10–11.) The minimum statutory award is appropriate here. "Courts considering similar infringement actions regarding unauthorized online distribution of copyrighted material have found statutory damages between $750.00 and $2,250.00 per infringing work to be reasonable." *Malibu Media, LLC v. Tsao*, Civ No. 15–6672, 2016 WL 3450815, at *4 (D.N.J. June 20, 2016) (collecting cases). Further, courts routinely award minimum statutory damages as part of default judgments in copyright infringement actions. *Warner Bros. Records v. Paahau*, No. CV 06-00320 SPK-KSC, 2007 WL 704586, at *3 (D. Haw. Feb. 28, 2007). With respect to this specific plaintiff, other courts have detailed its "unscrupulous use of the courts as a profit generating business." *Nowobilski*, 2016 WL 4059651, at *6 (citing

9

*Malibu Media, LLC v. Powell*, Civ No. 15–1211, 2016 WL 26068, at *1 (M.D. Pa. Jan. 4, 2016) (noting "the troubling trend of copyright trolls in this particular film industry, who file mass infringement lawsuits against Doe defendants not to be made whole, but rather as a primary or secondary revenue stream" (internal quotation marks and citations omitted)). Courts throughout the country have granted Plaintiff the minimum statutory damages even when it has requested more. See, *e.g., id.*; *Malibu Media, LLC v. Redacted*, Civ No. 15–0750, 2016 WL 3668034, at *3-4 (D. Md. July 11, 2016) (collecting cases); *Malibu Media, LLC v. Funderburg*, Civ No. 13-02614, 2015 WL 1887754, at *3-4 (N.D. Ill. Apr. 24, 2015) ($2,250 requested); *Malibu Media, LLC v. Cui*, Civ No. 13-5897, 2014 WL 5410170, at *4 (E.D. Pa. Oct. 24, 2014) (same); *Malibu Media, LLC v. Schelling*, 31 F. Supp. 3d 910, 912 (E.D. Mich. 2014) (same). Accordingly, this Court will not grant Plaintiff any more money than the statute mandates. Plaintiff is therefore awarded statutory damages of $750 for each of the 21 infringed works contained in files #1–3 and 6–23, totaling $15,750.

### b. Injunctive Relief

In addition to monetary damages, Plaintiff seeks injunctive relief pursuant to 17 U.S.C. § 502(a) and 17 U.S.C. § 503(b). Specifically, Plaintiff requests the Court permanently enjoin Defendant from continuing to infringe Plaintiff's copyrights, order Defendant to delete and forever remove digital media files relating to Plaintiff's copyrights from all of Defendant's computers, and order Defendant to delete and forever remove the infringing copies of the copyrights Defendant has on his computers. (*See* Proposed Order.)

As to Plaintiff's first request, § 502(a) provides that "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). As to Plaintiff's second and third requests, § 503(b) provides further relief, stating that "the court may order the destruction . . . of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . . [.]" 17 U.S.C. § 503(b). To obtain a permanent injunction, a plaintiff must demonstrate that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the

balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Plaintiff has sufficiently demonstrated that injunctive relief is appropriate in this action. Plaintiff will likely suffer irreparable harm absent an injunction, and monetary relief would be inadequate compensation. (Doc. 283 at 12–13.) The nature of the BitTorrent system means the Plaintiff's works can continue to circulate the internet at a fast rate and reach many users. (*See* Am. Compl. at ¶¶ 10–13; Doc. 28-4 at 6.) Should this distribution persist, Plaintiff would likely be without legal recourse in regard to the copyrights implicated in the current case. As to the balance of hardships, Defendant suffers no injury due to an injunction other than what would "be a result of [Defendant] ceasing the allegedly infringing conduct." *Malibu Media, LLC*, 2016 WL 3668034 at *5 (quoting *Medias & Co., Inc. v. Ty, Inc.*, 106 F. Supp. 2d 1132, 1140 (D. Colo. 2000)). Finally, the prevention of copyright infringement serves the public interest. *See Nowobilski*, 2016 WL 4059651, at *7. Accordingly, the court will grant Plaintiff's request for permanent injunction and destruction of digital media files and infringing copies of Plaintiff's work pursuant to 17 U.S.C. § 502(a) and 17 U.S.C. § 503(b) of the Copyright Act.

### c. Attorney's Fees and Costs of Litigation

Plaintiff requests an award of attorney's fees of $1,182, consisting of 1.9 attorney hours billed at $300 per hour and 7.2 paralegal hours billed at $85 per hour. (Mosesi Decl. ¶ 9.) "In any action under this title, the court in its discretion may allow the full recovery of costs . . . the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Attorney's fee awards are calculated using the lodestar method whereby the hours reasonably spent in the litigation are multiplied by a reasonable hourly rate. *Ferland v. Conrad Credit Corp*, 244 F.3d 1145, 1146–48 (9th Cir. 2001). The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts. First a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. [*See D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990); *Hensley v. Eckerhart*, 461 U.S. 424,] 461 (1983)]. The party seeking an award of fees must submit evidence

supporting the hours worked and the rates claimed. *See Hensley*, 461 U.S. at 433.

> A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id.* at 434. Second, a court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. [Footnote omitted] *See Blum v. Stenson*, 465 U.S. 886, 898-901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination); *Hensley*, 461 U.S. at 434 n.9 (noting that courts may look at "results obtained" and other factors but should consider that many of these factors are subsumed in the lodestar calculation). The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quoting *Blum*, 465 U.S. at 898-901); *Blum*, 465 U.S. at 897; *D'Emanuele*, 904 F.2d at 1384, 1386; *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1989).

*Van Gerwin v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

Some courts addressing Malibu Media as a plaintiff have pointed out that their "case is one of hundreds filed . . . across the country, using nearly identical complaints and motions for default judgment" and reduced or denied the requested attorney's fees. *Schelling*, 31 F. Supp. 3d at 912 (reducing attorney's fees to $555); *see also Nowobilski*, 2016 WL 4059651, at *8; *Malibu Media, LLC v. Johnson*, Civ No. 12–1117, 2013 WL 3895265, at *2 (S.D. Ind. July 29, 2013). Reviewing the itemized bill of Plaintiff's counsel, there are two "catchall" miscellaneous categories, one each for the attorney and the paralegal(s). The itemized statement block-bills 1 hour of "Case management, managing paralegals and reviewing approximately 10 e-mails; miscellaneous" by the attorney, over a 10-month period. (Mosesi Decl. ¶ 9.) It also lists 2.1 hours of "Case tracking and management; miscellaneous" by paralegals, over the same 9-month period.[3] (*Id.*) The Court finds this block-billing to be improper, *see Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th

---

[3] Notably, it appears that this itemized chart, down to the tenths of hours and descriptions of the work, was simply copied from other cases. Except for the dates, it is precisely identical to two declarations filed by different attorneys in entirely different Malibu Media cases in New Jersey and Indiana, respectively. *See* Declaration of Patrick J. Cerillo, *Malibu Media, LLC v. Nowobilski*, No. 15-cv-2250 (KM)(MAH) (Doc. 15-5 ¶9) (D.N.J. Dec. 14, 2015); Declaration of Paul J. Nicoletti, *Malibu Media, LLC v. Saari*, Civ. No. 14-860 (Doc. 33-4 ¶ 9) (S.D. Ind. July 14, 2015). The only possibilities seem to be (a) copying or (b) a truly remarkable coincidence. There is reason to be skeptical that these numbers reflect anything that happened in *this* case. However, like Judge McNulty of the District of New Jersey, this Court will not—at this time—act on that skepticism and require Mr. Mosesi to appear to testify under oath. Further such coincidences may strain credulity to point where the Court is left with no choice but to do so.

Cir. 2007), and reduces the request by 1 hour of attorney time and 2.1 hours of paralegal time, for a total reduction of $478.50.[4] *See Nowobilski,* 2016 WL 4059651, at *8; *Saari,* 2015 WL 5056887, at *4.

Plaintiff also seeks $465.00 for costs incurred, $400.00 for a statutory filing fee and $65.00 for process server fees. (Mosesi Decl. ¶ 8.) The Copyright Act authorizes courts to award "full costs" to the prevailing party in a copyright infringement action. 17 U.S.C. § 505. This includes otherwise non-taxable costs that lie outside the scope of 28 U.S.C. § 1920. *Twentieth Century Fox Film Corp. v. Entmt't Distrib.*, 429 F.3d 869, 884-85 (9th Cir. 2005). Here, the requested costs are reasonable. *See Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1095 (N.D. Cal. 2008) (awarding costs of $2,005 for filing fee and for costs of process server, in copyright and trademark infringement default judgment, where costs were reasonably incurred).

Accordingly, the Court recommends Plaintiff be awarded attorney's fees in the amount of $703.50 and costs in the amount of $465.00, for a total of $1,168.50.

## IV. CONCLUSION AND RECOMMENDATIONS

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS that:

1. Plaintiff's Motion for Entry of Default Judgment (Doc. 28) be GRANTED IN PART and DENIED in part, as specified below;
2. Judgment be entered in Plaintiff's favor and against Defendant Christian Sianturi;
3. Plaintiff be awarded statutory damages under 17 U.S.C. § 504(c)(1) in the amount of $15,750.00;
4. Plaintiff be awarded reasonable attorney's fees in the amount of $270.00 (.9 hour at $300 per hour), paralegal fees in the amount of $433.50 (5.1 hours at $85 per hour), and costs of suit in the amount of $465.00, for a total of $1,168.50; and

---

[4] The Court finds the requested hourly rates of $300 for Attorney Mosesi and $85 for his paralegal(s) are reasonable. *See Silvester v. Harris*, No. 1:11-CV-2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17, 2014) (concluding that "the current reasonable hourly rates in the Fresno Division are between $175 and $380, depending on the attorney's experience and expertise, with $300 being the upper range for attorneys with 10 years or less experience," and "[t]he current reasonable hourly rate for paralegal work in the Fresno Division ranges from $75 to $150, depending on experience.") (internal citations omitted).

5. Defendant Christian Sianturi be enjoined from infringing Plaintiff's copyrights; and that Defendant be ordered to destroy all unauthorized copies of Plaintiff's works in his possession.

Furthermore, Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to Defendant Christian Sianturi at his last known address.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **August 3, 2017** /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE